UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IT CASINO SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TRANSIENT PATH, LLC, et al.,<br><br>Defendants. | Case No. 21-cv-09872-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR STRIKE**<br><br>Re: Dkt. No. 71 |

Plaintiff (and counter-defendant) IT Casino Solutions, LLC ("ITCS") moves to strike or dismiss affirmative defenses and counterclaims asserted by defendants (and counter-claimants) Transient Path, LLC ("Transient Path") and Thomas Calvin (collectively, "the defendants"). The underlying suit filed by ITCS alleges that Transient Path infringed upon two of its patents and that both defendants violated California's Unfair Competition Law ("UCL") by creating, advertising, and selling casino management software.

ITCS's motion is GRANTED in part and DENIED in part. The fifth and sixth affirmative defenses, along with the third and fourth counterclaims, may proceed as pleaded. The remaining defenses and counterclaims are either STRUCK or DISMISSED, as described below.

I will give the defendants leave to amend as long as any amendment is made in good faith. The defendants are entitled to defend themselves and bring counterclaims, but to assert 17 affirmative defenses and 12 counterclaims in a 105-page filing, then oppose the motion to dismiss them in a 10-page opposition that is short on substance and long on snark, is not effective.

**BACKGROUND**

The factual allegations giving rise to this action have been well-covered in my prior Orders, most recently my Order granting in part and denying in part summary judgment. *See* Dkt. Nos. 48, 85. For brevity's sake, I will focus only on the facts relevant to this motion. I incorporate

by reference the full background set forth in my prior Orders. Dkt. Nos. 48, 85.

ITCS sued the defendants on December 21, 2021, alleging that the defendants infringed upon two of ITCS's patents—U.S. Patent No. 8,635,126 ("the '126 Patent") and U.S. Patent No. 10,109,148 ("the '148 Patent")—and violated the UCL by creating and selling casino management software. Dkt. No. 1. On July 5, 2022, the defendants filed a 105-page amended answer to ITCS's Second Amended Complaint ("SAC"), asserting 17 affirmative defenses, 12 counterclaims against ITCS, and a claim against a third-party, Justin Risnoveanu. Dkt. No. 56. ITCS moved to strike or dismiss those defenses and counterclaims on August 2, 2022. Dkt. No. 71. Pursuant to Civil Local Rule 7-1(b), this matter was suitable for resolution without oral argument.

After this motion was briefed, I ruled on the defendants' motion for summary judgment, holding in part that ITCS's UCL claim was preempted by California's Uniform Trade Secrets Act ("CUTSA"), as it was based on the alleged misuse of information. Dkt. No. 85 at 17. Accordingly, I granted summary judgment on the UCL claim in the defendants' favor. *See id*.

**LEGAL STANDARD**

**I.      RULE 12(B)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570. "[A] formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to

accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## II.     RULE 12(F)

Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and alteration omitted). Motions to strike are "generally disfavored" because they "may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). They should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *New York City Emp. Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (citation omitted).

In weighing a motion to strike, the pleadings must be viewed in the light most favorable to the nonmoving party. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012). "When striking a claim or defense, leave to amend should be freely given if doing so does not cause prejudice to the opposing party." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. Mar. 28, 2019) (citation omitted).

## DISCUSSION

Before turning to the parties' specific arguments, it is worth winnowing down the issues. As mentioned, I recently granted summary judgment in the defendants' favor on ITCS's UCL claim, holding that it was preempted by the CUTSA. Dkt. No. 85. Because the UCL claim

3

1   is no longer in play, neither are six affirmative defenses.  I will STRIKE the first, second, third,

2   tenth, fifteenth, and seventeenth affirmative defenses, as they focus only on the already-decided

3   UCL claim.  The tenth counterclaim, which seeks declaratory judgment that the defendants did not

4   violate the UCL, is also DISMISSED as moot.

5        I will also STRIKE the fifth, sixth, seventh, and eighth counterclaims, which seek

6   declaratory judgments that ITCS's patents are invalid and unenforceable.  A court "has complete

7   discretion whether to hear a counterclaim for declaratory judgment." *Stickrath v. Globalstar, Inc.*,

8   No. C-07 -1941-TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008).  "Numerous courts

9   have used that discretion to dismiss counterclaims under [Rule] 12(f) where they are either the

10  'mirror image' of claims in the complaint or redundant of affirmative defenses." *Id.*  Courts in this

11  circuit "have struck counterclaims that present identical factual and legal issues as affirmative

12  defenses of patent or trademark invalidity." *Epic Games, Inc. v. Acceleration Bay LLC*, No. 19-

13  CV-04133-YGR, 2020 WL 1557436, at *2 (N.D. Cal. Apr. 1, 2020) (citing cases).

14       But "it is not always appropriate to strike declaratory judgment counterclaims simply

15  because they concern the same subject matter or arise from the same transaction as the

16  complaint." *Stickrath*, 2008 WL 2050990, at *4.  "The court should focus on whether the

17  counterclaims serve any useful purpose and should dismiss or strike a redundant counterclaim

18  only when it is clear that there is a complete identity of factual and legal issues between the

19  complaint and the counterclaim." *Id.* (citations and quotation marks omitted).  "In addition, courts

20  often require some showing of prejudice by the moving party." *Intel Corp. v. Tela Innovations,*

21  *Inc. ("Intel Corp. II")*, No. 18-CV-02848-WHO, 2019 WL 2476620, at *8 (N.D. Cal. June 13,

22  2019) (citation omitted).

23       The fifth and sixth counterclaims seek declaratory judgments that the asserted patents are

24  invalid.  Am. Answer [Dkt. No. 56] ¶¶ 481, 534.  They are redundant of the fifth and sixth

25  affirmative defenses, which argue that the asserted patents are invalid under 35 U.S.C. § 100. *Id.*

26  ¶¶ 146-147.  There is also a complete identity of factual and legal issues—the fifth and sixth

27  affirmative defenses are each summarized in two sentences, the latter of which cross-reference the

28  fifth and sixth counterclaims. *See id.*  And I agree with ITCS's overarching point that it will be

United States District Court
Northern District of California

prejudiced if it is "required to conduct expensive litigation and discovery on such a large number of claims and defenses." *See* Mot. [Dkt. No. 71] 1:11-13. The defendants' arguments about invalidity can be heard as a defense to ITCS's infringement claims; counterclaims seeking declaratory judgment to infringement are unnecessarily duplicative.

The same is true of the seventh and eighth counterclaims and affirmative defenses. The former seeks declaratory judgments that the patents at issue are unenforceable because they were procured through inequitable conduct; the latter asserts the same as a defense. *See* Am. Answer ¶¶ 148-149, 663, 721. To the extent that the eighth counterclaim asserts unenforceability based on the patent prosecution laches, this is redundant, as prosecution laches is separately asserted in the thirteenth affirmative defense. *See id*. ¶¶ 182, 714.

It is also worth noting that the defendants do not specifically respond to ITCS's arguments related to the declaratory judgment counterclaims in their opposition.[1] *See* Oppo. [Dkt. No. 79] 1-10. Nowhere do they contest that the affirmative defenses and counterclaims share a "complete identity of factual or legal issues" where striking the latter would be improper. Nor do they challenge prejudice in the context of these specific counterclaims.

Left are 11 affirmative defenses and seven counterclaims. I now turn to those.

## I. AFFIRMATIVE DEFENSES

"Courts in this district generally apply the *Twombly/Iqbal* standard to affirmative defenses rather than the lower standard of 'fair notice.'" *Intel Corp. II*, 2019 WL 2476620, at *10 (citing cases). Accordingly, "a defense need not include extensive factual allegations," but "bare statements reciting mere legal conclusions may not be sufficient." *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar 26, 2012) (citations omitted). "As long as there is some factual support, the affirmative defense can stand." *Intel Corp. II*, 2019 WL 2476620, at *10 (citation omitted).

---

[1] This becomes a common theme. The defendants' opposition critiques ITCS for bringing the motion to dismiss and identifies what they describe as misstatements of law and fact, but largely ignores specific arguments raised against specific defenses or counterclaims. *See generally* Oppo. Instead, the defendants summarily assert that "[m]any, if not all, of the 'issues' raised in ITCS's motion have been preemptively explained" in the amended answer "and do not require further repeating here." *Id*. at 9:20-21. As a result, many of ITCS's arguments go unanswered.

**A. Judicial Estoppel**

Judicial estoppel is an equitable doctrine intended to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (citations omitted). Courts consider three factors in determining whether to apply the doctrine: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party successfully persuaded a court to accept its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled'"; and (3) whether the party seeking to assert an inconsistent position would "derive an unfair advantage or impose an unfair detriment" on its opponent if not estopped. *Id*. at 750-51.

In their fourth affirmative defense, the defendants point to a number of statements that ITCS made, either in prior litigation or in the prosecution of the '126 Patent application, that they contend are inconsistent and thus barred by estoppel. Am. Answer ¶¶ 119-145. According to the defendants, examples of those inconsistent statements include:

- In prior litigation, ITCS alleged that another company approached it "in or around January 2007" to discuss possible joint ventures or partnerships involving ITCS's casino management software, while the SAC alleges that Calvin contacted ITCS "in or around the summer of 2007" about a possible business relationship. *Id*. ¶¶ 121-124.

- During the prosecution of the application that led to the '126 Patent, ITCS's counsel stated that the critical prior art date was November 17, 2009, while the SAC asserts it was "sometime in 2006." *Id*. ¶¶ 125-128.

- Also during the patent prosecution, counsel submitted a declaration stating that "no user manuals were distributed" until after November 19, 2009, while the SAC alleges that Calvin was given a user manual in 2007. *Id*. ¶¶ 129-132.

But, as ITCS notes, nowhere do the defendants address the second and third estoppel considerations. *See* Mot. at 8:7-10. The amended answer does not allege that the court accepted the earlier statements or that ITCS would be unfairly advantaged (or the defendants placed at an unfair detriment) if ITCS were not estopped. *See* Am. Answer ¶¶ 119-145. Nor do the defendants specifically address judicial estoppel in their opposition. *See generally* Oppo.

The defendants have not plausibly alleged that ITCS should be judicially estopped from

asserting certain positions because they have not even attempted to address the second and third factors warranting estoppel. The *Twombly/Iqbal* pleading standard that applies to affirmative defenses cannot be met if a defense is wholly silent as to certain elements of the claim. ITCS's motion to strike the fourth affirmative defense is therefore GRANTED.

### B. Invalidity

In their fifth and sixth affirmative defenses, the defendants assert that the claims of both the '129 Patent and the '148 Patent are invalid under 35 U.S.C. § 101, 102, 103, and 112 for multiple reasons. *See* Am. Answer ¶¶ 146-147, 480-601. The defendants contend that certain claims are invalid because, among other reasons, they are directed to unpatentable abstract ideas and do not add inventive concepts, were disclosed in prior art, and are indefinite. *See id*. ¶¶ 488-489, 491, 519-531, 544-545, 547, 588-600. The allegations are specific to certain claims in each patent, and are pleaded with sufficient particularity under *Twombly/Iqbal*. *See id*.

ITCS's challenge to the fifth and sixth affirmative defenses is lacking. Its sole argument is that the defendants assert that all claims of the '126 Patent are invalid, but that ITCS does not assert all claims against the defendants, specifically Claim Three. Mot. at 8:17-18. According to ITCS, "there is no case or controversy as to the unasserted claim(s)." *Id*. at 8:17:24.

Not only does this argument ignore the sixth affirmative defense (which focuses on the '148 Patent), it is also not clear that ITCS did not assert Claim Three of the '126 Patent against the defendants. ITCS points to a February 2020 notice letter from its counsel as proof, but the letter cited speaks only to the '148 Patent, not the '126 Patent. *See id*. (citing Dkt. No. 56-7). Regardless, the SAC alleges that Transient Path infringed "one or more valid and enforceable claims of the '126 Patent," without specifically excluding any claims. SAC ¶ 60.

ITCS's argument against the fifth and sixth affirmative defenses is not compelling, and the defendants have otherwise sufficiently pleaded these defenses. Although I will strike the corresponding counterclaims as redundant, the fifth and sixth affirmative defenses may proceed.

### C. Enforceability

In their seventh and eighth affirmative defenses (relying on allegations raised in their seventh and eighth counterclaims), the defendants argue that ITCS's patents are unenforceable

because of inequitable conduct before the United States Patent and Trademark Office ("PTO"). Am. Answer ¶¶ 148-149.

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). The Federal Circuit has held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1327. The "materiality required to establish inequitable conduct is but-for materiality"—i.e., if the PTO would not have allowed a claim but-for the allegedly inequitable conduct. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011).

"The relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation and (2) specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1327. Knowledge and intent "may be averred generally," but the pleadings must still "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id*.

The defendants allege that inequitable conduct occurred in a number of ways regarding both patents. Although some of the requisite information is alleged (including who, what, when, where, and how the alleged misrepresentations or omissions occurred), the defendants do not sufficiently allege but-for materiality. For example, the defendants allege several failures to disclose prior art during the prosecution of the '126 Patent but do not allege that the "PTO would not have allowed [the] claim had it been aware of the undisclosed prior art," as the Federal Circuit expressly held was needed to show but-for materiality in *Therasense*. *See* Am. Answer ¶¶ 606-615, 629-631, 640-642, 646-648. Similarly, the claim alleges failures to provide certain documents or pay fees during the prosecution of both patents, but does not assert how the failure to do so was material. *See, e.g., id*. ¶¶ 625, 672-673, 683-685, 694-696.

The closest the defendants come to alleging but-for materiality is when they take issue

with the recording of the assignments to the patents. *See id*. ¶¶ 651-662, 697-705. But they only summarily argue that the patents would not have issued "but for" the alleged misrepresentations of assignment to ITCS, without further explaining why. *See id*. ¶¶ 657, 700. It is not clear from the allegations that the PTO would not have otherwise allowed the claim.

The motion to strike the seventh and eighth affirmative defenses is GRANTED.

### D. Equitable Estoppel

"Estoppel is an equitable defense to a charge of patent infringement and, if proven, may entirely bar an infringement suit." *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995). Three elements are key: whether (1) the patentee's misleading conduct leads the alleged infringer to reasonably infer that the patentee does not intend to enforce the patent against him; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the infringement claim moves forward. *See id*. "The conduct may include specific statements, action, inaction, or silence . . . if such silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith." *Id*. at 1063-64.

The defendants argue that equitable estoppel bars ITCS's infringement claims because although ITCS sent Transient Path a notice of alleged infringement in February 2020 regarding the '148 Patent, "almost two full years of inaction and no correspondence" followed, causing Transient Path to "reasonably infer that ITCS did not intent to enforce any patent" against it. Am. Answer ¶¶ 151, 154. The defendants allege that the February 2020 letter, coupled with that "two years of inaction," misled Transient Path to believe that ITCS would not act, that Transient Path "relied on the conduct of ITCS," and "will be materially prejudiced if ITCS is allow[ed] to proceed" with the infringement claims. *Id*. ¶ 155.

As ITCS notes, this overlooks an important detail: the November 19, 2021, letter that ITCS sent Transient Path alleging infringement of the '126 Patent, a month before this action was filed. *See* Mot. at 11:19-23 (citing in part SAC ¶ 54); Dkt. No. 1. The defendants do not deny that this second letter was sent or explain how the two-year period of purported silence still constitutes misleading conduct by ITCS. *See generally* Oppo. In fact, they do not make *any* specific

9

arguments in their opposition regarding equitable estoppel.  *See generally id*.

Setting aside the omission of the second letter, the amended answer only makes conclusory allegations as to the second and third elements of an equitable estoppel defense.  Without more, allegations that Transient Path "relied on the conduct of ITCS" and "will be materially prejudiced" if the infringement claims proceed amount to a formulaic recitation of the elements, which does not satisfy *Twombly* and *Iqbal*.  *See Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do").  Even if the second letter did not thwart the defense, the allegations regarding the second and third elements are too conclusory for it to proceed.

The motion to strike the defendants' ninth affirmative defense is GRANTED.

**E. Waiver**

"A party asserting a waiver defense must allege that a plaintiff intentionally relinquished or abandoned a known right."  *Finjan, Inc. v. Bitdefender Inc.*, No. 17-CV-04790-HSG, 2018 WL 1811979, at *4 (N.D. Cal. Apr. 17, 2018) (citation omitted).  The defendants base their eleventh defense, waiver, on the same allegations underlying their equitable estoppel defense: that ITCS's February 2020 letter, followed by "two years of inaction," "infers at least an implied waiver, if not an explicit waiver, of any patent infringement cause of action."  Am. Answer ¶¶ 164-170.  Again, the defendants fail to mention the second letter and again, they fail to specifically address waiver in their response.  *See generally* Oppo.

The defendants have not plausibly alleged that ITCS waived any right to asset infringement, particularly considering the (undisputed) allegation that ITCS sent the defendants a second notice letter a month before this suit was filed.  The motion to strike the eleventh affirmative defense is GRANTED.

**F. Acquiescence**

Acquiescence "limits a party's right to bring suit following an affirmative act by word or deed by the party that conveys implied consent to another."  *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Edu., Inc.*, 621 F.3d 981, 988 (9th Cir. 2010).  The elements are: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the

delay caused the defendant undue prejudice." *Id*. at 989.

The defendants assert that a series of happenings—ITCS's "knowledge" that Marc Kessman (a member of Transient Path) was a patent inventor and of Transient Path's Cobblestone software, and the oft-referenced February 2020 letter—coupled with the purported lack of correspondence from ITCS after February 2020 "amounted to at least implied assurance to defendant Transient Path that ITCS consented to" the Cobblestone software. Am. Answer ¶¶ 171-177. But an implied assurance, by its very nature, does not amount to an "affirmative act" by ITCS or active representation that it would not assert a right or claim.

The defendants do allege that ITCS "facilitated the replacement of its software" at a casino named in the SAC "by voluntarily limiting or terminating" its contractual obligations to ITCS, which the defendants argue "indicate that it consented to replacement of its software." *Id*. ¶¶ 179-180. To the extent that the replacement of this software is material to the infringement claims (and not the already-determined UCL claim), it may constitute an affirmative act. But the defendants do not even attempt to plead the remaining elements of acquiescence. *See id.* ¶¶ 171-179. The amended answer does not allege that any delay in bringing the litigation was inexcusable or that it unduly prejudiced the defendants. *See id*. This defense fails as pleaded; it too is STRUCK.

### G. Prosecution Laches

The doctrine of prosecution laches "may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010) (citation and quotation marks omitted). It also requires a showing of prejudice—"evidence of intervening rights, i.e., that either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." *Id*. at 729.

The defendants' thirteenth affirmative defense is too conclusory to proceed. They contend that the application that led to the '148 Patent "was abandoned for more than three years," from 2014 to 2017, and summarily asserts that this was an "unreasonable and unexplained delay." Am. Answer. ¶¶ 184-185. But it offers no further allegations (or argument, for that matter) stating *why*

11

1  that delay was unreasonable and unexplained.  Moreover, the defendants have not shown how a

2  three-year delay amounts to an egregious misuse of the patent system.  *See id*. ¶¶ 182-190.

3  ITCS's motion to strike this defense is also GRANTED.

### H. Unclean Hands

A defense of unclean hands requires: "(1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* No. 16-CV-01393-JST, 2017 WL 2311296, at *2 (N.D. Cal. May 26, 2017) (citation omitted).  The defendants base their unclean defense on three purported misdeeds by ITCS: (1) its breach of confidentiality and partnership agreements between ITCS and a third party, ISIS M3 SRL; (2) Risnoveanu's taking of photos inside a casino, in violation of casino policy; and (3) its failure to provide certain documents to the defendants as required by Patent Local Rule 3-2(c).  Am. Answer ¶¶ 207, 209-211, 214.

It is unclear how ITCS's alleged breaches of agreements with a third party or taking of photos inside a casino harmed the defendants, let alone relate to ITCS's infringement claims.  If the defendants take issue with disclosures made in this case, I direct them to my Standing Order, which outlines the proper protocol for addressing discovery issues.  Asserting an affirmative defense of unclean hands is not it.  Accordingly, the fourteenth affirmative defense is STRUCK.

### I. Patent Misuse

"The purpose of the patent misuse defense was to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005) (quotation marks omitted).  A holder misuses a patent by "impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (citation and alterations omitted).  At the pleading stage,  patent misuse "requires only allegations of conduct that had the effect of impermissibly extending the limited protection from competition by the patent." *Intel Corp. v. Tela Innovations, Inc. ("Intel Corp. I")*, No. 18-CV-02848-WHO, 2018 WL 4859314, at *7 (N.D. Oct. 5, 2018).

The defendants allege that in January 2022, "ITCS sought to obtain from defendant Transient Path payment for a license to [the '126 Patent] dating back to February 2020" but that it "has proffered absolutely no reason for entitlement to a license royalty prior to November 2021" and therefore its "attempt to license [the '126 Patent] beyond the permissible temporal scope is void as a matter of law and amounts to patent misuse." Am. Answer ¶¶ 250, 252-253.

ITCS notes that section 271(d)(3) of the Patent Act provides that a patent owner will not be "deemed guilty of misuse" if he "sought to enforce his patent rights against infringement or contributory infringement," and argues that the defendants ignore this safe harbor provision. Mot. at 14:22-15:4. The defendants offer a shifting basis for their misuse defense, arguing that the safe harbor provision does not apply because "bringing a suit for patent infringement may constitute patent misuse when the suit is brought in bad faith with an improper purpose." *See id*. at 6:25-7:4.

Focusing on the amended answer, this defense is again too conclusory to proceed. It summarily alleges that ITCS attempted to license the '126 Patent "beyond the permissible temporal scope." Am. Answer ¶ 253. But it offers no factual allegations as to what the temporal scope of the patent was, nor how it was exceeded. *See id*. ¶¶ 248-254. Moreover, as alleged by ITCS, the '126 Patent issued in January 2014—years before the alleged attempt to license the patent to the defendants. Reply [Dkt. No. 81] 11:16-19; *see also* SAC ¶ 58.

The sixteenth affirmative defense is STRUCK.

## II. COUNTERCLAIMS

### A. Declaratory Judgment of Priority Dates

The first and second counterclaims seek declaratory judgments of the priority dates of the applications that led to the '126 and '148 Patents. Am. Answer ¶¶ 278-356. According to the defendants, "[d]etermination of a patent's expiration requires, in part, determination of the patent's priority" and Transient Path "is entitled to a determination and declaration as to when ITCS's alleged rights expire." *See id*. ¶¶ 282-283, 328-329.

ITCS's argument is three-fold. First, it contends that there is no case or controversy, as any alleged injury would not be redressed by a declaratory judgment regarding the priority dates. Mot. at 15:12-16:3. Similarly, it argues that these counterclaims do not state a claim upon which

13

relief can be granted, as "[n]o relief can be granted by merely determining a priority date." *Id*. at 16:14-16. Finally, it contends that these counterclaims are unnecessarily redundant, as the patents' priority dates will be determined through other affirmative defenses or counterclaims alleging invalidity or unenforceability. *See id*. at 16:7-13; Reply at 11:23-12:2.

The defendants' response is wanting. It cites to a Federal Circuit case and an advisory note to Federal Rule of Civil Procedure 57, the former holding that the determination of a priority date is "purely a question of law" if the underlying facts are undisputed, and the latter stating that declaratory judgments "often involve[] only an issue of law on undisputed or relatively undisputed facts." Oppo. at 7:5-17 (citing *E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols., LLC*, 525 F.3d 1353, 1359 (Fed. Cir. 2008)). But the defendants make no argument beyond these citations and do not explain why this issue would not be covered by other claims or defenses.

I agree with ITCS that these counterclaims do not state a claim upon which relief may be granted and should otherwise be struck as redundant. Patent priority dates are typically considered alongside validity and enforceability. *See, e.g., Intel Corp. I*, 2018 WL 4859314, at *2 (seeking declaratory judgment of unenforceability and noninfringement based on priority dates); *E.I. du Pont de Nemours*, 525 F.3d at 1353 (holding that a district court abused its discretion "in finding that a substantial question as to validity existed because of uncertainty regarding the priority date"). It follows, then, that any questions over the asserted patents' priority dates will be considered alongside the defendants' arguments that the patents are invalid or that the accused products do not infringe.

Moreover, it is unclear what relief can be granted based on the priority dates alone. Determining the priority date may speak to whether the patents are enforceable or valid, or whether the accused products infringe. But determining the priority date, without more, does not appear to afford the defendants any form of relief—and the defendants do not direct me to any case showing that it does.

Because the first and second counterclaims seek declaratory judgment of an issue that will be covered in determining infringement and validity, and because it is not clear that declaring priority dates alone would afford the defendants any relief, these counterclaims are DISMISSED.

14

**B. Declaratory Judgment of Noninfringement**

Claims of direct infringement arise under section 271(a) of the Patent Act, which states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). An accused product may infringe a patent literally or under the doctrine of equivalents. *See Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Id.* at 1360 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). "Under the doctrine of equivalents, a product or process that does not literally infringe a patent claim may nevertheless be held to infringe if it performs substantially the same function in substantially the same way to obtain the same result." *Id.* at 1362 (citations and quotation marks omitted).

Two types of indirect infringement exist: induced infringement and contributory infringement. *See* 35 U.S.C. § 271(b)-(c). Under section 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." *Id.* § 271(b). Meanwhile, contributory infringement occurs under section 271(c) when a party sells or offers to sell a "component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process," that constitutes a material part of the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." *Id.* § 271(c); *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).

The third and fourth counterclaims seek declaratory judgments that Transient Path did not directly or indirectly infringe on either of the asserted patents. Am. Answer ¶¶ 357-479. ITCS argues that these counterclaims do not sufficiently plead that the defendants did not indirectly infringe the patents and are duplicative of defenses, though it does not specify which ones. Mot. at 17:4-12.

The counterclaims sufficiently allege that Transient Path did not directly infringe on the patents. As with the invalidity defenses, the amended answer provides specific, detailed

allegations regarding the claims of the asserted patents and the accused products. *See* Am. Answer ¶¶ 357-479. *Twombly/Iqbal* is satisfied with regard to direct infringement.

It is not, however, regarding indirect infringement. As ITCS notes, the amended answer merely asserts that "there can be no indirect infringement without direct infringement" but fails to specifically allege why that indirect infringement did not occur. *See id*. ¶¶ 407, 462.

The third and fourth counterclaims may proceed on the theory that Transient Path did not directly infringe upon ITCS's patents. If Transient Path intends to base these claims on a theory that it did not indirectly infringe ITCS's patents, it must amend to add more detailed allegations.

### C. Monopolization

Section 2 of the Sherman Act prohibits the monopolization or attempted monopolization of trade or commerce. 15 U.S.C. § 2. A plaintiff can bring an action under this section "based on the alleged maintenance and enforcement of a fraudulently obtained patent." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016). To do so, he must show:

> [F]irst, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and second, all the other elements necessary to establish a Sherman Act monopolization claim.

*Id*. Those other elements are: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Id*. (citation omitted).

It appears that the defendants rely on the same allegations of fraud for their Sherman Act claim as their inequitable conduct claim—i.e., the alleged fraud involved in the prosecution of the patents. *See* Am. Answer ¶¶ 730-731, *see also* ¶ 737 ("ITCS's attempted enforcement of [the patents] procured by fraud on the USPTO is a violation of law under the Sherman Act"). As explained, the fraud alleged in the inequitable conduct claim is insufficiently pleaded; the defendants do not state why the alleged misrepresentations were material to the patents' procurement. The same issue dooms their ninth counterclaim. It too is DISMISSED.

### D. Abuse of Process

"The common law tort of abuse of process arises when one uses the court's process for a

1    purpose other than that for which the process was designed." *Rusheen v. Cohen*, 37 Cal. 4th 1048,

2    1056 (2006). To successfully assert such a claim, the plaintiff must show that the defendant: "(1)

3    contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of

4    the process not proper in the regular conduct of the proceedings." *Id*. at 1057 (citation omitted).

5        The defendants base their eleventh counterclaim, abuse of process, on: (1) ITCS's alleged

6    commencement of a "sham lawsuit with an ulterior motive, namely to limit defendants'

7    commercial speech, stifle competition, financially harm and/or bankrupt defendants"; (2) bringing

8    a "baseless" UCL claim preempted by the CUTSA; (3) declining the defendants' request for a

9    two-week response extension unless the defendants provided information about the casinos where

10   Transient Path's software was installed; (4) submitting a joint case management statement that did

11   not include a calculation of damages or restitution sought; (5) producing initial discovery

12   disclosures that did not include documents; and (6) providing allegedly "inadequate" infringement

13   contentions. Am. Answer ¶¶ 813-843.

14       ITCS contends that these alleged acts do not give rise to an abuse of privilege claim and

15   that the claim is barred in part by the litigation privilege. Mot. at 23:15-21. The defendants

16   summarily argue that the privilege does not apply, asserting that they were injured by ITCS's

17   course of conduct rather than its communications. Oppo. 7:25-8:10; Am. Answer ¶¶ 849-950.

18       California's litigation privilege "generally protects from tort liability any publication or

19   communications made in connection with a judicial proceeding." *Banga v. Equifax Info. Servs.*

20   *LLC*, No. 14-CV-03038-WHO, 2015 WL 3799546, at *4 (N.D. Cal. June 18, 2015) (citations

21   omitted). It typically applies to any communication (1) made in a judicial or quasi-judicial

22   proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

23   the litigation; and (4) that has some connection or logical relation to the action. *Id*.

24       The purportedly flawed case management statement, discovery disclosures, and

25   infringement contentions, along with the refusal to extend the deadline, clearly fall within the

26   litigation privilege. They are communications made in a judicial proceeding, by counsel, to

27   achieve the objects of the litigation, that are connected to the action. Not only does the privilege

28   prohibit tort liability on these grounds, but there are other, appropriate channels for resolving these

1  types of disputes.  If abuse of process claims were permitted every time a party declined to agree
2  to an extension request, the federal court system would hear nothing but abuse of process claims.
3        As far as bringing a "sham" lawsuit or "baseless" UCL claim, ITCS alleged that Transient
4  Path infringed upon ITCS's patents and that the defendants violated the UCL.  *See generally* SAC.
5  It can hardly be said that the lawsuit is a "sham" or that the underlying claims were "baseless."
6  The defendants may (understandably) be frustrated at facing litigation.  But ITCS has the right to
7  bring suit if it believes its patents are being infringed upon or that the defendants otherwise
8  violated the law.  The abuse of process counterclaim is DISMISSED.

### E. UCL

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Prof. & Bus. Code § 17200.  Each prong provides a separate and distinct theory of liability.  *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (citations omitted).

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006).  The "unfair prong" requires proving either: (1) "the public policy which is a predicate to a consumer unfair competition action" is "tethered to specific constitutional, statutory or regulatory provisions," or (2) that the challenged business practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014) (citations omitted).

In their twelfth and final counterclaim, the defendants essentially allege that ITCS violated the "unlawful" and "unfair" prongs of the UCL by filing this suit. Am. Answer ¶¶ 852-864.  They specifically point to "filing this action in an improper venue to make defendants' defense of this action more difficult" and "attempting to extort trade secret information from defendants in exchange for a routine extension of time" as indicia of unlawful acts under the UCL.  *Id*. ¶ 862.

The defendants have not alleged a sufficiently specific basis for their UCL claim.  They argue that ITCS's "deceptive representations and conduct are unfair under the UCL because they have a negative effect on competition." *Id*. ¶ 861.  But a claim pleaded under the unfair prong requires more, as stated above.  And the defendants have not identified any law that ITCS

18

purportedly violated by filing suit in this venue or by requesting information in exchange for the extension of time. *See* Am. Answer ¶¶ 852-864. (And in any case, the proper method for disputing venue is to file a motion addressing it). Moreover, it is unclear if the filing of a lawsuit such as this can serve as the basis for a UCL claim. The defendants point to no comparable cases, and an initial review of the case law yields none. The UCL counterclaim is DISMISSED.

To sum up: the fifth and sixth affirmative defenses, along with the third and fourth counterclaims, may proceed as pleaded. Otherwise, the defenses and counterclaims are STRUCK or DISMISSED. I will give the defendants the opportunity to file another amended answer and counterclaims that specifically address the above-mentioned deficiencies.

## CONCLUSION

ITCS's motion is GRANTED in part and DENIED in part, with leave to amend. Any amended pleading is due within 21 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: October 3, 2022

William H. Orrick
United States District Judge